UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Debbie Louise Gadsden, | ) | Civil Action No. 5:15-1474-DCN-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Carolyn W. Colvin, Acting Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706 to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.  Relevant Background

   A.  Procedural History

In December 2011, Plaintiff filed an application for DIB alleging a disability onset date of June 30, 2006. Tr. 172-78. In February 2012, Plaintiff filed an application for SSI alleging a disability onset date of June 30, 2005. Tr. 179-86. After being denied both initially and on reconsideration, Tr. 82-85, 104-07, on April 1, 2013, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 124-25. On September 20, 2013, the ALJ conducted a hearing, taking testimony from Plaintiff and a vocational expert ("VE"). Tr. 44-59. At the

administrative hearing Plaintiff amended her alleged onset date to December 22, 2011. Tr. 48. The ALJ issued a decision on October 21, 2013, finding Plaintiff not disabled under the Act. Tr. 26-39. Plaintiff requested review of the decision, Tr. 21-22, and on February 18, 2015, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision for purposes of judicial review. Tr. 1-6. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on April 2, 2015.  ECF No. 1.

### B.  Plaintiff's Background

Plaintiff, born in March 1963, was 48 years old as of her amended alleged onset date of December 22, 2011, and 50 years old when the ALJ rendered his decision. *See* Tr. 264.  Plaintiff completed one year of college and her prior work history includes "yeoman military" in the Coast Guard, banquet/restaurant waitress, and sandwich preparer in a fast-food restaurant. Tr. 258. Plaintiff alleged that she stopped working on August 15, 2010 because she was fired "for not being able to keep up with the job." Tr. 257. Plaintiff identified the following conditions that limit her ability to work: sleep apnea, back problems, depression, and panic attacks. *Id.*

On December 22, 2011, Plaintiff filed a disability claim with the Department of Veterans Affairs ("VA") seeking compensation for various service-connected impairments. Tr. 209-25. The VA issued its Rating Decision on July 24, 2013, granting Plaintiff's claim for major depressive disorder with an evaluation of 70 percent, migraine headaches with an evaluation of 30 percent, gastroesophageal reflux disease (acid reflux) with an evaluation of 10 percent, and scarring from various surgical procedures with an evaluation of zero percent. Tr. 216-17. The VA denied Plaintiff's service-connected claims for lumbar strain, hypertension, and sleep apnea. Tr. 217. The VA's award of benefits statement noted the following: "Your overall or combined

rating is 80%. We do not add the individual percentages of each condition to determine your combined rating. We use a combined rating table that considers the effect from the most serious to the least serious conditions." Tr. 211.

      C.   The Administrative Hearing

          1.   Plaintiff's Testimony

Plaintiff and her counsel appeared at her administrative hearing on September 20, 2013. Tr. 44-59. In response to questions from the ALJ Plaintiff stated that she was 50 years old, married, and lived with her husband, 22-year-old daughter, and seven-year-old grandson. Tr. 46. Plaintiff testified that she was on active duty with the Coast Guard for 16-1/2 years until her enlistment ended. Tr. 47. Plaintiff stated she received income from the VA due to her 80% disability rating and was being treated primarily at the VA. *Id.*

Plaintiff's counsel informed the ALJ that Plaintiff was amending her onset date to December 22, 2011—"the date of the VA 80 percent disability rating." Tr. 48. In response to questions from her attorney Plaintiff testified that the conditions for her disability rating included depression, acid reflux, and migraine headaches. Tr. 49. Plaintiff testified that she was unable to work currently because of "trouble focusing, and concentrating, and memory." *Id.* Plaintiff stated that she sees a psychiatrist and social worker every six weeks for treatment for depression and migraines. *Id.* When asked about symptoms related to her depression Plaintiff stated: "Bad migraine headaches. Always like feel like I'm going to kill myself. And always voices. Hearing voices all the time, and daydreaming." Tr. 50. Plaintiff also testified that she has daily panic attacks that last for 20 minutes. *Id.* Plaintiff stated that she does not like being around people, both in crowds and with her family. *Id.* Plaintiff testified that she does not go anywhere regularly, she does not drive or go out alone, and she is unable to manage daily tasks. *Id.* Plaintiff

stated that her husband assists her with tasks, she does not do any chores, and she spends a typical day watching TV. Tr. 50-51. Plaintiff testified that she has problems sleeping at night and uses a CPAP machine. She also stated that she naps "off and on" all day. Tr. 51. Regarding her reflux disease Plaintiff stated her symptoms include upset stomach, nausea, constipation, and food "stuck in [her] throat, in [her] chest." *Id.* Plaintiff stated that she has issues in her head, her "brain's always hurting," and she has back pain. Tr. 52. Plaintiff stated the only treatment she received for her back pain was three physical therapy treatments. *Id.* Plaintiff testified that she has weakness in her legs, arms, and knees and she is "always feeling like [she's] going to fall." *Id.* Plaintiff stated she has pain both when sitting or when standing and walking. *Id.* Plaintiff testified that she can sit for 20 minutes before needing to stand and move around. Tr. 53. Plaintiff stated that doctors have restricted her to lifting "less than ten pounds." *Id.* Plaintiff testified that she does no household chores and does not cook any meals. *Id.*

The ALJ resumed questioning of Plaintiff and asked how frequently she hears voices. Plaintiff responded that she hears voices all day, from "time to time," and she recognizes the voices. Tr. 53. Plaintiff testified that her mental and physical problems were equally serious in preventing her from working. Tr. 54-55.

      2.   VE Testimony

VE Tonetta Watson-Coleman also testified at Plaintiff's administrative hearing. Tr. 55-58. The VE confirmed that Plaintiff had no prior work at the sedentary or light levels with no interaction with the general public. Tr. 55. The ALJ asked the VE to assume a hypothetical worker of the same age, with the same work background, and education as the Plaintiff, retaining only light exertional capacity with no climbing, crawling or balancing, or exposure to industrial hazards. The person would have a sit/stand option at will in a low-stress setting with no more

than occasional decision making or changes in the setting, and no interaction with the general public including communication by telephone. Tr. 55-56. The VE identified the following examples of unskilled, light work consistent with that hypothetical: electrical assembler, specific vocational preparation ("SVP")[1] of 2, unskilled, South Carolina 2,310 positions, national economy 187,920 positions, DOT number 729.687-010; housekeeper, SVP of 2, unskilled, South Carolina 15,580 positions, national economy 877,980 positions, DOT 323.687-014; and small products assembler, SVP of 2, unskilled, South Carolina 1,570 positions, national economy 235,910 positions, DOT 706.684-022.

Plaintiff's counsel asked the VE if the electrical assembler and small products assembler were "production rate jobs." Tr. 57. The VE responded that it depended on the particular employer but some could be production-rate jobs. *Id.* Plaintiff's counsel asked if the number of available jobs would be reduced if the individual was unable to perform at a production-rate pace, and the VE responded affirmatively. *Id.* Plaintiff's counsel asked if any of the jobs would be available if the person was "off task approximately 15 percent of the time to account for occasional decrease in efficiency" and the VE responded that would "eliminate the jobs." *Id.*

The ALJ asked the VE to clarify her definition of a production rate occupation, and she described it as follows:

> [S]ome employers have—depending on the type of work that they're assembling or doing, you have to assemble or complete a certain number of items within a timeframe, so they may have, say, a 200-piece rate, and you're expected to complete at least 200 during a particular time period, and that's considered

---

[1] Specific Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. An SVP level of 2 is defined as anything beyond short demonstration up to and including 1 month. *See* Dictionary of Occupational Titles ("DOT"), App. C, 1991 WL 688702.

production. Whereas, some places you just work on what you have to do for the day.

Tr. 57-58. The ALJ asked the VE if she could "approximate the percentages of the two occupations that would fall in to the category [she] just described," and the VE responded that she "wouldn't be able to accurately do that." Tr. 58.

### D. Additional Materials Submitted to the Appeals Council

After the ALJ rendered his decision, Plaintiff filed a Request for Review of Hearing Decision/Order, Tr. 22, and submitted additional evidence to the Appeals Council for its consideration along with her counsel's brief, Tr. 6. This evidence included a decision from the VA dated June 11, 2014, Tr. 295-301, and a statement from the Director of the Berkeley County Office of Veterans Affairs dated June 16, 2014, Tr. 302.

The June 11, 2014 VA decision provided that Plaintiff was entitled to Dependents' Education Assistance effective December 22, 2011, entitled to Individual Unemployability effective December 22, 2011, her evaluation of migraine headaches was continued as 30 percent disabling, and her evaluation of depression was continued as 70 percent disabling. Tr. 298-99. Unlike the prior VA Ratings Decision of July 24, 2013, this 2014 decision did not provide an overall or combined disability rating. *Compare* Tr. 209-15 *with* Tr. 295-301.

The June 16, 2014 letter from the Director of the Berkeley County Office of Veterans Affairs was addressed "To Whom It May Concern" and stated as follows:

> This is to certify that [Plaintiff] is an honorably discharged veteran and has been determined by the Department of Veterans Affairs as being 100% permanently and totally disabled due to service-connected disabilities effective December 22, 2011. No future exams are scheduled.
> The following information is provided to assist the above named veteran in obtaining a military identification card for Exchange and Commissary privileges.

Tr. 302.

The Appeals Council did not analyze this additional evidence in connection with its review of the ALJ's decision other than to state:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.
>
> We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of evidence of record.
>
> We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

Tr. 1-2.

## II. Discussion

### A. The ALJ's Findings

In his October 21, 2013, decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since December 22, 2011, the amended alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: depression, migraine headaches, and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for six hours each in an eight-hour workday, with normal breaks. The claimant cannot climb, crawl, balance for safety, and cannot have any exposure to workplace hazards such as unprotected heights or dangerous, moving machinery. She should be given the option

       to sit or stand at her workplace at will. Further, the claimant is limited to work in a low stress work environment, which is defined as requiring no more than occasional decision-making or changes in the work setting. She should have no interaction with the general public, and can only have occasional interaction with coworkers and supervisors.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 16, 1963 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).[2]

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 22, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 31-39.

    B. Legal Framework

        1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

---

[2] Plaintiff was 48 years old on her amended alleged onset date, but still within the 18-49 age range for a younger individual.

8

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

9

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *See Vitek v. Finch*, 428 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C. Analysis

Plaintiff argues: (1) the Commissioner failed to explain the weight given to the opinions of the Veterans Affairs Administration; and (2) the ALJ's RFC analysis was not based on substantial evidence. Pl.'s Br. 1, ECF No. 15.

1. Consideration of the Opinions of the VA

Plaintiff's first allegation is that the ALJ erred in his consideration of the VA's disability rating because his analysis did not comport with the Fourth Circuit Court of Appeals' decision *Bird v. Commissioner of Social Security,* 699 F.3d 337 (4th Cir. 2012). Pl.'s Br. 9. The Commissioner argues that "unlike in *Bird*, the ALJ did not refuse to consider the evidence on which the determination was made," the evidence demonstrates that Plaintiff's impairments were not disabling, the VA's determination is not binding on the ALJ, and the ALJ provided a valid

reason for discounting the VA rating. Def.'s Br. 8. In her Reply, Plaintiff asserts the "ALJ failed to explain which evidence he relied upon." Pl.'s Reply Br. 2, ECF No. 18.

At Step Three of the sequential evaluation process the ALJ considered Plaintiff's medical records related to her treatment for depression and migraine headaches. Tr. 35-36. The ALJ also considered the medical opinions of Plaintiff's treating physicians and other non-treating consultants. Tr. 37. With regard to Plaintiff's disability rating from the VA, the ALJ stated:

> The undersigned has considered the July 2013 letter from the Department of Veterans Affairs at exhibit 7D documenting that claimant has been determined to be 70-percent disabled due to major depressive disorder, 30-percent disabled due to migraine headaches, and 10-percent disabled due to acid reflux disease, due to service-connected disabilities by that agency. Determinations of disability made by other agencies, however, are not binding on the Social Security Administration or determinative of disability under Social Security Law (20 CFR 404.1504 and 416.904). While the disability rating provided by the Department of Veterans Affairs provides some insight into the severity of claimant's impairments under that agency's regulations, the undersigned assigns it little weight as the medical records in evidence fail to support a conclusion that claimant is disabled under Social Security's regulations.

Tr. 37.

In *Bird*, the Fourth Circuit held that "in making a disability determination, the SSA must give substantial weight to a VA disability rating" but noted that because standards and effective dates of coverage between the two agencies may vary, "an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate." *Bird*, 699 F.3d at 343. This case is not one in which the ALJ failed to mention or explain the consideration given to the VA's disability decision. Instead, the ALJ considered the VA's disability rating and determined that, in Plaintiff's case, lesser weight should be given to the rating. As part of his decision in this case, the ALJ noted the medical evidence of record noting that Plaintiff "received only routine medical treatment" for depression, prior to 2013 she "would deny having headaches during routine medical appointments," and although she had

been "assessed as suffering from migraine headaches, she ha[d] not sought regular or routine medical treatment for her headaches." Tr. 35. The ALJ specifically considered Plaintiff's disability ratings from the VA that determined she was 70% disabled due to depression and 30% disabled due to migraine headaches. Tr. 37. The ALJ determined Plaintiff's severe impairments did not prevent her from doing "light work with additional limitations." Tr. 37.

Based on the ALJ's consideration of the record, the undersigned recommends a finding that the ALJ's decision to accord less than substantial weight to the VA disability rating is supported by substantial evidence in the record and was reached upon proper application of the law.

Plaintiff also contends the "Appeals Council accepted, but did not explain whether any weight was given to, the VA's subsequent impairment rating which found that [Plaintiff] was 100 percent disabled, retroactive to December 2011, the alleged onset date." Pl.'s Br. 9. Citing to *Bird*, Plaintiff asserts this later determination was relevant to the ALJ's decision. *Id.* The Commissioner argues that remand is unnecessary and would be futile because the prior "July 26, 2013 VA rating concerns the identical effective date of December 22, 2011 (Tr. 209), which the ALJ adequately considered (Tr. 37)." Def.'s Br. 9.

The undersigned notes that the letter on which Plaintiff relies is not an official "Rating Decision" made by the VA, but instead is a letter from the director of the Berkeley County Office of Veterans Affairs that asserts, without providing any basis for the assertion, that Plaintiff was determined to be "100% permanently and totally disabled" by the VA. *See* Tr. 302. As noted above in the Background section of this Report, although the disability ratings for the individual impairments in Plaintiff's 2013 Rating Decision totaled 110% the VA assessed Plaintiff with an "overall or combined rating [of] 80%." Tr. 210-11. The VA explained that it

13

does not add the individual percentages to determine the combined rated but instead uses "a combined rating table that considers the effect from the most serious to the least serious conditions." Tr. 211. The basis for the Berkeley County Director's statement regarding Plaintiff's "100%" disability is unclear.

> Under the applicable regulation:
>
> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. §§ 404.970(b), 416.1470(b).

"Evidence is new 'if it is not duplicative or cumulative' and is material if there is 'a reasonable possibility that the new evidence would have changed the outcome.'" *Meyer v. Astrue,* 662 F.3d 700, 705 (4th Cir. 2011) (quoting *Wilkins v. Sec'y, Dep't Health and Human Servs.,* 953 F.2d 93, 95–96 (4th Cir. 1991)). In *Meyer*, the Fourth Circuit Court of Appeals held that Appeals Councils are not required to articulate a rationale for denying a request for review and are required to make findings of fact and explain their reasoning only where it grants a request for review and issues its own decision on the merits. *Meyer*, 662 F.3d at 706. In this case, because the Appeals Council denied review of the ALJ's decision, it was not required to provide any findings or explain its rationale in any way. *Meyer,* 662 F.3d at 705. For this reason alone, Plaintiff's arguments relating to the Appeals Council's review do not present reversible error. After careful consideration of the record, the undersigned recommends a finding that the statement from the Berkeley County Office of Veterans Affairs does not render the ALJ's decision unsupported by substantial evidence and there was no error on the part of the Appeals

14

Council. *See Smith v. Chater,* 99 F.3d 635, 638-39 (4th Cir. 1996) (affirming an ALJ's denial of benefits after reviewing new evidence presented to the Appeals Council because the court concluded that "substantial evidence support[ed] the ALJ's findings"). Accordingly, the undersigned recommends this challenge to the ALJ's decision be dismissed.

### 2. ALJ's RFC Analysis

Plaintiff's final allegation of error is that the ALJ's RFC analysis was not based on substantial evidence. Citing to *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), Plaintiff asserts that "the ALJ's limitation does not correspond with even the moderate limitation in concentration, persistence and pace which he assessed earlier [in the sequential evaluation]." Pl.'s Br. 10. Plaintiff argues that "[i]n light of the voluminous evidence regarding [Plaintiff's] mental impairments, and the specific findings by the treating and examining physicians at the VA regarding her difficulty sustaining work-related functioning, the ALJ's RFC analysis is clearly insufficient." *Id.* at 11. The Commissioner contends that "unlike *Mascio*, the ALJ included a number of mental limitations in the RFC, restricting Plaintiff to low stress work, no more than occasional decision making, no more than occasional changes in the work setting, no interaction with the public, and only occasional interaction with coworkers and supervisors (Tr. 34, Finding No. 5)." Def.'s Br. 10. The Commissioner notes that the ALJ specifically stated his finding regarding Plaintiff's moderate difficulty with concentration, persistence or pace was not an RFC assessment, and the ALJ further discussed the evidence explaining his RFC assessment. *Id.* at 11. In reply Plaintiff argues that despite his discussion of the evidence the ALJ failed to provide the more detailed assessment found in paragraph B of the listings for adult mental disorders. Pl.'s Reply at 3.

In *Mascio v. Colvin,* the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d 632, 638 (4th Cir. 2015) (quoting *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1180 (11th Cir. 2011)).[4] The court explained that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court also indicated that there could be instances where a limitation in concentration, persistence, and pace does not affect a claimant's ability to work and would be appropriately excluded from the hypothetical to the VE and the RFC. *Id.* In such circumstances, however, an explanation from the ALJ is required. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c); 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3); 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3); 416.920a(e)(3). Here, at Step Three the ALJ applied the special technique for evaluation of mental impairments and found Plaintiff's mental impairments resulted in mild restrictions in her activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence and pace, with no episodes of decompensation of extended duration. Tr. 32-22. After making his ratings the ALJ specifically acknowledged that:

---

[4] In *Mascio*, the Fourth Circuit noted it was joining other circuits, quoting the Eleventh Circuit's *Winschel* decision and indicating the Eleventh Circuit had joined the Third, Seventh, and Eighth Circuits in its *Winschel* decision. *See Mascio*, 780 F.3d at 638.

16

> [t]he limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

Tr. 33.

"Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, 1996 WL 374184, at *6. Prior to proceeding to Step Four the ALJ assessed Plaintiff's RFC and limited Plaintiff to light work "in a low stress work environment, which is defined as requiring no more than occasional decision-making or changes in the work setting. She should have no interaction with the general public, and can only have occasional interaction with coworkers and supervisors." Tr. 34. The ALJ then went on to provide a detailed discussion of Plaintiff's mental impairments and provided the following analysis:

> While the claimant's testimony has been carefully considered, the medical evidence of record does not indicate that her symptoms are quite as limiting as she has alleged. The claimant testified that she cannot work because she has depression issues, and therefore has difficulty with her memory and trouble focusing. However, while she has been assessed as suffering from depression, she has received only routine medical treatment for this condition. Medical records indicate that since November 2011, she has received once-a-month therapy appointments through the VA. (Exhibits 5F, 9F). However, she has not sought any additional treatment for depression. The claimant has never sought emergency or urgent medical treatment for her depression. She has not been seen, or requested treatment, on more than a monthly basis for her mental health condition. Further, at each appointment, the claimant was assessed as having GAF scores of 51-to-57, indicating only moderate depressive symptoms. (Exhibits 5F, 9F). Additionally, a

17

> mental status examination in March 2013 found the claimant to be fully oriented and alert, with no evidence of attending to internal stimuli. Her speech rate, rhythm, volume, and tone were appropriate, and she made good eye contact throughout the examination. She had no abnormal movements. Her thought content was without paranoia, delusions, grandiosity, preoccupations, obsessions, phobias, poverty of content, or ideas of reference. The therapist noted the claimant was pleasant, calm, cooperative, and dressed appropriately. Her affect was congruent, although she described her mood as "not good." Further, her judgment was intact and her insight was fair. (Exhibit 9F). At another appointment in June 2013, while she described her mood as depressed, sad, frustrated, and angry, her eye contact was good, she reported no delusions, and her memory, attention, and concentration were all deemed to be intact. (Exhibit 9F). However, the undersigned has taken the claimant's symptoms and mental health impairment into account, and has limited her work in a low stress work environment with no interaction with the public and only occasional interaction with coworkers and supervisors.

Tr. 35. The ALJ also considered Plaintiff's subjective complaints and noted that Plaintiff "reported she had trouble with her memory and difficulty focusing, but during each mental health appointment, records indicate the claimant's memory, attention, and concentration were all intact." Tr. 36. The ALJ also noted:

> Lastly, while the claimant testified she only sits at home and watches television, because she is too limited to do much else, at various medical appointments, she reported taking care of children. In April 2012, she noted that she was caring for her adult children and grandchildren, and therefore had no time for herself. (Exhibit 5F/75). In March 2013, she reported that she was taking care of her twin six-month old grandchildren. (Exhibit 9F/247). Again in June 2013, she noted again taking care of her twin grandchildren, as they were no longer in daycare. (Exhibit 9F/121). At a different appointment in June, the claimant reported that she spends a lot of time cleaning the kitchen, up to two-and-a-half hours a day, and that during a typical day, she would play with her grandchild. (Exhibit 9F).

*Id.*

The ALJ thoroughly discussed the medical evidence of record, the opinion evidence, and Plaintiff's testimony and reporting regarding her mental impairments. Here, unlike in *Mascio*, because the ALJ provided a detailed discussion and explanation of Plaintiff's mental impairments as they related to his RFC assessment, remand is not required. Accordingly, the

18

undersigned recommends a finding that Plaintiff has failed to demonstrate the ALJ erred in assessing her RFC.

   III. Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned finds that the Commissioner performed an adequate review of the whole record, including evidence regarding Plaintiff's mental condition, and that the decision is supported by substantial evidence.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under Section 1631(c)(3) of the Act, 42 U.S.C. Sections 405(g) and 1383(c)(3), it is recommended that the Commissioner's decision be affirmed.

   IT IS SO RECOMMENDED.

May 17, 2016                                                              Kaymani D. West
Florence, South Carolina                                      United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**